UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | Case No.: 1:19CR00112 |
| | : | |
| RONALD ZENGA | : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, Ronald Zenga, by and through counsel, submits this memorandum to aid the Court with imposing a sentence in this case that is "sufficient, but not greater than necessary" to achieve the statutory sentencing purposes of 18 U.S.C. § 3553 (a). For the reasons below, Mr. Zenga asks the Court to impose a sentence of ten (10) years or 120 months, which is the applicable mandatory minimum jail term in this case.

## I. BACKGROUND

Mr. Zenga was arrested on October 17, 2018, following the filing of a criminal complaint and issuance of a related warrant for Receipt and Distribution of Child Pornography, in violation of 18 U.S.C. § 2252 (a)(2) and Knowing Possession and Access with Intent to View Child Pornography, in violation of 18 U.S.C. § 2252 (a)(4)(B).[1] He initially appeared before the Court that same day, and at the government's request, was ordered held without bail.[2]

Mr. Zenga reappeared before the Court on November 28, 2018, for both a preliminary hearing and detention hearing. He voluntarily waived both events, thereby agreeing to remain held without bail.[3] A grand jury returned an eight-count indictment against him on September

---

[1] PSR, ¶.1.
[2] Id.
[3] PSR, ¶.2.

24, 2019.[4]  Mr. Zenga pleaded not guilty at his arraignment on October 3, 2019, and again, agreed to his continuous voluntary detention.[5]

On November 19, 2020, Mr. Zenga pleaded guilty to four counts of an eight (8) count Indictment.  Specifically, he admitted guilt to the following offenses: one count (Count 1) of Enticement or Coercion of a Minor to Engage in Illicit Sexual Activity, in violation of 18 U.S.C. § 2422 (b); one count (Count 6) of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252 (a)(2) and (b)(1); one count (Count 7) of Receipt of Child Pornography, in violation of 18 U.S.C. § 2252 (a)(2) and (b)(1); and one count (Count 8) of Possession of Child Pornography, in violation of 18 U.S.C. § 2252 (a)(4) and (b)(2).  The Court accepted Mr. Zenga's pleas and adjudged him guilty.[6]

U.S. Probation issued its final presentence report (PSR) related to Mr. Zenga on September 3, 2021.[7]  The Defense has no objections to the PSR in its final form.  Mr. Zenga's advisory sentencing guidelines range is life imprisonment.[8]  He is scheduled for an in-person sentencing hearing on Friday, September 10, 2021.

## II. SENTENCING FACTORS AND CONSIDERATIONS

The District Court is required to fashion a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of 18 U.S.C. § 3553 (a).  *United States v. Booker*, 543 U.S. 220 (2005).   Sentencing should begin with a calculation of the applicable sentencing guidelines range.  *Gall v. United States*, 128 S. Ct. 586, 596 (2007) (*citing Rita v. United States*,

---

[4] PSR, ¶.3.
[5] PSR, ¶.4.
[6] PSR, ¶.5.
[7] Document No. 34 on docket.
[8] This advisory U.S.S.G. range is based upon Mr. Zenga having a Criminal History Category I and a Total Offense Level of 43.  PSR, ¶.59, 56, 99.

127 S. Ct. 2456, 2480 (2007)). The guidelines calculation is a starting point and initial benchmark for the Court to consider, however, it is not the only sentencing consideration. *Id.*

A Court may not presume the guidelines range is reasonable but must make an individualized assessment of each defendant based upon the facts presented in each case. *Gall,* 128 S. Ct. at 597. After both parties are afforded an opportunity to argue for whatever sentence they deem appropriate, the Court must then consider the factors[9] of 18 U.S.C. § 3553 (a) to determine the most appropriate sentence in the instant case. *Id.* As such, Mr. Zenga asks the Court to adopt his sentencing recommendation of ten (10) years or 120 months of incarceration when considering application of the 18 U.S.C. § 3553 (a) factors to his case, as well as the information contained in and attached to this memorandum.

**(1) Voluntary Disclosure of Full Scope of Misconduct**

The seriousness of Mr. Zenga's misconduct cannot be understated, minimized, or marginalized in any way. He accepts full responsibility for the totality and wrongfulness of his actions. Most importantly, upon coming to the attention of law enforcement solely in the context of a child pornography investigation, Mr. Zenga voluntarily disclosed to law enforcement his

---

[9] To determine an appropriate sentence that is sufficient, but not greater than necessary, the Court shall consider the following:
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed:
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
    (3) the kinds of sentences available;
    (4) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
    (5) any pertinent policy statement issued by the Sentencing Commission;
    (6) the need to avoid unwarranted sentence disparities among the defendants with similar records who have been found guilty of similar conduct; and
    (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553 (a).

historical conduct of sexually abusing his daughter. Prior to Mr. Zenga's disclosure, his daughter had not reported the abuse to anyone, and neither law enforcement authorities nor the Department of Children, Youth and Families (DCYF) were investigating him for any form of sexual misconduct. It was his self-report that brought the misconduct to light, and to the attention of authorities.

**(2) Acceptance of Responsibility**

Mr. Zenga has fully demonstrated an acceptance of responsibility for his actions since the very beginning of this case. First, it was he who revealed to law enforcement the full extent of his misconduct, ranging from child pornography offenses to sexually abusing his minor child. Mr. Zenga has made no effort to minimize his misconduct in any way. Arguably, had he not disclosed the sexual abuse, perhaps this misconduct would presently not be known to law enforcement or the Court. The fact that Mr. Zenga brought this to the government's attention speaks volumes to the earnestness and genuineness of his acceptance of responsibility. The Defense submits that the full completeness and scope of Mr. Zenga's acceptance is striking, especially considering the gravity of the misconduct and potential consequences he faces as a result. While the average defendant accepts just aspects of the charged misconduct that are necessary to resolve the underlying case, Mr. Zenga voluntarily offered full disclosure, which speaks to his character, contriteness, and advancement down the long road of rehabilitation.

Following his arrest, Mr. Zenga agreed to voluntary detention, both at his initial appearance on October 17, 2018, and subsequent detention hearing on November 28, 2018 (which he waived) and arraignment on October 3, 2019. He never made an application to this Court for his release on bail, knowing full well his intentions all along to plead guilty and accept his punishment, which he knew would inevitably involve, among other things, a considerable

4

term of incarceration. He asks the Court to take the totality of these circumstances into consideration when adjudging sentence.

**(3) Mental Health**

Mr. Zenga has taken full advantage of all mental health treatment opportunities available to him at the Wyatt throughout the last three years in pretrial custody. His records reflect that he has disclosed everything to the facility's mental health staff relating to the instant offense. This again underscores his true acceptance of responsibility.

Aside from pursuing treatment for the condition(s) that undeniably caused or contributed to the cause of the admitted offenses, Mr. Zenga has used his time in jail with mental health providers to begin working to heal old wounds. At age 10, Mr. Zenga and his younger brother were sexually abused by the boyfriend of a babysitter. His victimization as a child lasted over the course of several months and was never reported to authorities. Later in life as an adult, while serving in the U.S. Navy, a senior ranking officer attempted to rape Mr. Zenga while stationed in Sicily, Italy. He woke to the man masturbating him and attempting to turn him over, presumably to force anal penetration. Mr. Zenga physically repelled his assailant, but failed to report this sexual assault due to fears attributed to retribution, embarrassment, humiliation, and the possibility that his career would be adversely impacted from ringing the sex assault bell against a superior. Despite experiencing sexual abuse at various points in his life, Mr. Zenga never received any counseling or mental health treatment. The treatment he received thus far at the Wyatt is the only treatment he has ever received to address the emotional and psychological impacts these historical events have had on him.

By all accounts, Mr. Zenga is fully engaged in and clearly benefiting from treatment. He participated in Wyatt's Sex Offender Treatment Program (SOTP) and was diagnosed with

Unspecified Depressive Disorder and Pedophilia in May 2020. Aside from sex offense focused therapy, Mr. Zenga has also sought treatment with mental health staff at Wyatt on at least ten occasions to address his PTSD, which stems not only from his experiences as a child, but also his military experience. Mr. Zenga's records from Wyatt reflect that he has long experienced nightmares, depression, and auditory hallucinations.

During COVID-19, when all treatment and other rehabilitative programs were suspended in February 2020, Mr. Zenga took charge within his unit of many other alleged and/or admitted sex offenders by leading the SOTP classes and encouraging others to complete whatever forms of treatment they could on their own by corresponding with outside providers. Mr. Zenga has used his time and experiences in jail to not only work on himself, but also to assist others in their own recovery via peer-to-peer counseling. Even once COVID-19 subsided, at least at Wyatt, Mr. Zenga continued to co-facilitate the SOTP sessions in his unit, and still does so today. Continuing in this endeavor is Mr. Zenga's goal, whether he remains incarcerated or is released back into the community.

**(4) <u>Sex Offender Risk Assessment and Evaluation</u>**

In preparation for sentencing, the Defense retained Leo Keating, a Licensed Clinical Social Worker to perform a psychological and sexual evaluation of Mr. Zenga. Mr. Keating generated a report dated September 1, 2021 wherein he acknowledges that Mr. Zenga has sought treatment, has thus far been successful with treatment, and will benefit from continuing treatment. Mr. Keating specifically opines that with the proper treatment, Mr. Zenga poses a very low risk for recidivism. The Defense asks the Court to weigh this factor heavily when considering the proper term of incarceration to impose in this case. If Mr. Zenga can be healed

with proper treatment and closely monitored within the community,[10] there is no reasonable justification for ordering that he serves the remainder of his life in prison.

**(5) History and Characteristics of Ronald Zenga**

Ronald Zenga was born on March 17, 1975, in Newton, MA to the union of Daniel and Joan (nee Benedict) Zenga. He is presently 45 years old. Mr. Zenga grew up with his parents and brother, Kevin, in Mankato, Minnesota until his parents divorced in 1982. Mr. Zenga and his brother stayed with their mother following the divorce and had regular visitation with their father. During this time, Daniel Zenga was in the process of completing his doctorate degree, which caused the family to struggle financially. As a result, Joan Zenga was forced to work long hours whereas the children were often cared for by various babysitters. As noted above, the boyfriend of one of the family's babysitters began sexually abusing Mr. Zenga at the age of 10. When Kevin Zenga reported the abuse to their mother, she failed to report it to law enforcement and never sought counseling for her children.

During Mr. Zenga's adolescence, his mother moved the family 90 miles from their home for a job opportunity. The move caused tension between Mr. Zenga's parents, and eventually he and his brother made the decision to live with their father. Today he maintains close relationships with both of his parents.

Mr. Zenga's father, Daniel, age 77, resides in Laporte, Minnesota with his wife of thirty years, Ruth. Daniel is a retired clinical psychologist and Ruth is a retired manager of a local newspaper. Daniel has rheumatoid arthritis and is also battling lung cancer. Mr. Zenga's mother, Joan, age 75, is a retired training specialist for the State of Minnesota. She has suffered multiple strokes, which has caused serious cognitive issues. She currently resides in an assisted nursing

---

[10] As a result of his convictions in this case, Mr. Zenga will be required to register as a sex offender, faces up life of supervised release, and if released, will likely be subject to lifetime GPS monitoring.

home in Brooklyn Center, Minnesota. Mr. Zenga enjoys a close relationship with his parents and siblings, all of whom are aware of his legal situation and have offered him their support. Given the age of Mr. Zenga's parents and the potential jail sentence he faces, even if the Court imposes the mandatory minimum (as recommended), they may not live to see his release date.

Mr. Zenga's brother, Kevin Zenga, age 43, lives in Maplegrove, Minnesota with his wife and children and is employed as a sales consultant. Kevin has suffered from mental health issues in recent years. Mr. Zenga also has three stepsiblings – Ruth Zenga's children from a previous relationship. Crista Cullen, age 51, lives with her family in Minnesota and is employed with a bank. Casey Helling, age 44, also lives with his family in Minnesota and works as a farmer. Finally, Caryl Helling, age 39, resides with her family in Iowa and works as an elementary school teacher.

Mr. Zenga has had an illustrious career consisting of both military and civilian service to our nation. After graduating from Mankato West High School in 1993, Mr. Zenga attended college at the University of St. Thomas in St. Paul, Minnesota, where he majored in English and was a competitive swimmer. Mr. Zenga earned his bachelor's degree in 1997 and soon enlisted in the U.S. Navy.

While in the Navy, Mr. Zenga met his now former wife, Monique Williams, who also served until 2002. They married in 2004 and had their daughter in 2005. Soon after, Mr. Zenga was transferred to Milton, Florida where he worked as a flight instructor. After transfers to Japan, California, and Guam, Mr. Zenga deployed to Iraq in May 2011, where he commanded a Medevac helicopter squadron until 2013. Soon after Mr. Zenga deployed, Ms. Williams filed for divorce after both parties were unfaithful and ceased communicating with each other.

After their divorce was finalized in 2012, Ms. Williams remarried and relocated to Virginia with their daughter. By mid-2013, Mr. Zenga and Ms. Williams reconciled, causing her new marriage to terminate. When Mr. Zenga departed Iraq soon after, he moved Ms. Williams and their daughter back to Guam, and ultimately to Middletown, Rhode Island in 2013. Then, in April 2014, Mr. Zenga and Ms. Williams remarried.

As for advanced education, Mr. Zenga earned his first master's degree in business administration from the Naval Post Graduate School in 2008. Mr. Zenga then earned a second master's degree in National Security and Strategic Studies from the Naval War College in Newport, RI, where he also held a faculty position in the War Gaming Department. In 2017, he retired from the Navy at the rank of Lieutenant Commander after more than 20 years of military service. He initially entered the Navy as an enlisted sailor in 1997, was selected for Officer Candidate School (OCS), and work his way up the ranks. His military awards include, but are not limited to, a Meritorious Service Medal, the Navy Air Medal, two Navy Commendation Medals, and others related to his wartime deployment.

After receiving an honorable discharge from military service, Mr. Zenga transitioned into the civilian community as a government contracted program manager with Netsimco, a company in Middletown, Rhode Island, "specializing in warfare analysis, information technology, war game support, and advanced modeling and simulation."[11] Mr. Zenga was working in this capacity at the time of his arrest in October 2018. Following that arrest, he and Ms. Williams divorced a second time.

Mr. Zenga has been diagnosed as 70% disabled by the Veteran's Administration – 50% of which is attributed to Post-Traumatic Stress Disorder (PTSD) and 20% of which is attributable

---

[11] https://www.netsimco.com/?page_id=201.

to back injury, shoulder injury, and hearing loss. Records from Wyatt confirm Mr. Zenga's PTSD, along with arthritis, degenerative disk disease, and scoliosis in his spine. In a recent divorce settlement, Mr. Zenga voluntarily agreed to forego most of his monthly military retirement and disability benefits for a period of 15 years. These funds, totaling approximately $4100.00 per month are disbursed for the benefit of his daughter, Stella. He also designated her as the beneficiary of his post-911 GI Bill education benefits which provide for college tuition, room and board, and a monthly stipend for living expenses.

**(6) The Need for the Sentence Imposed to Reflect the Seriousness of the Offense**

The seriousness of Mr. Zenga's admitted misconduct cannot be understated. His actions amount to serious misconduct by any measure or standard. The Defense concedes that punishment for his actions is certainly warranted. However, a below-guidelines range sentence will serve the sentencing objective to reflect the seriousness of Mr. Zenga's admitted misconduct. The applicable guidelines range of life imprisonment is far greater than necessary to achieve this and any other particular sentencing consideration.

Mr. Zenga faces a maximum sentence of ten (10) years for each of the admitted charges, and assuming the sentences on each offense are imposed concurrently. In order for the Court to impose a guidelines range sentence in this case, which is life imprisonment, it would have to adjudge consecutive jail time. The Defense respectfully urges the Court to not impose consecutive time. 18 U.S.C. § 3584 (a) provides that "[m]multiple terms of imprisonment imposed at the same time concurrently unless the court orders or the statute mandates that the terms are to run consecutively." This language suggests that the default position for Courts to take at sentencing is to run multiple sentences concurrently. Further, there is no sentencing mandate in this case that warrants the imposition of consecutive time.

10

The Court should employ its discretion to impose only concurrent jail time against Mr. Zenga. 18 U.S.C. § 3584 (b) provides that the "court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factor set forth in section 3553(a)." When considering the 18 U.S.C. § 3553 factors, as addressed by this memorandum and its attachments, Mr. Zenga avers that a below-guidelines range sentence within the statutory, concurrent maximum jail term of ten (10) years is sufficient, but not greater than necessary to achieve all the statutory sentencing objectives.

**(7) <u>Promote Respect for the Law, Provide Just Punishment for the Offense, Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant</u>**

When considering this multi-part sentencing factor, Mr. Zenga urges that a sentence of ten (10) years or 120 months is sufficient, but not greater than necessary to achieve these federal sentencing objectives. Jail time exceeding this recommended mandatory minimum term is not required to promote Mr. Zenga's respect for the law. Prior to his arrest on October 17, 2018, Mr. Zenga had never been in trouble with the law. He stands before the Court a first-time offender with no criminal history. A prison term of ten (10) years is considerable by any measure, and plenty sufficient to punish Mr. Zenga, promote his respect for the law, and to deter him and others from future, similar misconduct.

Mr. Zenga's respect of the law may also be ascertained from his actions in this case. As stated above, he was more than cooperative with police at the time of his arrest, providing them with a confession above and beyond the reasons which prompted his arrest. Since then, Mr. Zenga has remained free of any disciplinary matters while at Wyatt.[12]

---

[12] PSR, ¶.62.

**(8) Self-Rehabilitation**

While at the Wyatt Mr. Zenga has worked in various positions to include a Back-Up Tray Runner, a Bio-Hazard worker, a Pod-Runner, and assisted in painting the detention facility.[13] Some of his performance evaluations from these prison-based jobs are attached to this memorandum for the Court's consideration.

Mr. Zenga has also used his spare time at the Wyatt, in addition to participating in mental health treatment and working, to completing innumerous classes, courses, and workshops.[14] The following chart is a comprehensive summary of those programs he has successfully completed while incarcerated. The certificates of completion are also attached hereto.

| Certificate | Date of Completion |
|---|---|
| SOTP Assessment & Treatment Service Part I | 05/07/2019 |
| SOTP Assessment & Treatment Services Part II | 05/07/2019 |
| Wellness and Life Skills Group | 05/11/2019 |
| Coping Skills | 07/11/2019 |
| Rational Thinking | July 2019 |
| Criminal Lifestyles | August 2019 |
| Living With Others | August 2019 |
| Social Skills | 09/24/2019 |
| Cognitive Behavioral Therapy | 09/24/2019 |
| Juvenile Sex Offender Workshop | 09/24/2019 |
| Juvenile Sex Offender Treatment Planning and Practices | 10/02/2019 |
| Sex Offender Planning Treatment Practices | 10/02/2019 |
| PTSD Recovery Program Treatment Skills | 10/15/2019 |
| Problem Solving Strategies & Tactics | 10/30/2019 |
| Important Decision-Making Skills in Everyday Life | 11/11/2019 |
| Victim Impact Participant Workbook | 11/18/2019 |
| Vocational Illness Management & Recovery: Wellness for Work | 11/18/2019 |
| Relapse Prevention Workbook | 11/18/2019 |
| Sex Offender Treatment Planning | 11/20/2019 |

---

[13] *Id.*
[14] *Id.*

| | |
|---|---|
| Relapse Prevention Workbook | 12/30/2019 |
| Post-Traumatic Stress Workshop | 01/27/2020 |
| Sex Offender Treatment Planning Program | 01/27/2020 |
| Reading the Short Story | 01/27/2020 |
| Leadership/Facilitator of Sex Offender Treatment Planning | 02/04/2020 |
| Post-Traumatic Stress Disorder Workbook | 02/10/2020 |
| Forgiveness Workbook | 03/10/2020 |
| Shakespeare in Film I | 03/02/2020 |
| The Forgiving Guilt and Shame Workbook | 03/17/2020 |
| Shakespeare in Film II | 04/16/2020 |
| PTSD Workbook | 05/12/2020 |
| Audio Course: Turning Points in Modern History I | 06/02/2020 |
| Sex Offender Treatment & Cognitive Behavioral Planning | 07/20/2020 |
| Coping Skills, Poetry | August 2020 |
| Victim Impact Workbook | 08/17/2020 |
| Personal Wellness Workbook | 09/17/2020 |
| Cognitive Behavioral Therapy Sex Offender Treatment Group Leader | 09/25/2020 |
| Personal Wellness Workbook Part 2 | 12/25/2020 |
| COVID-19 Anxiety Workbook | 01/25/2021 |
| Healthy Relationships Workbook | 03/15/2021 |
| Cognitive Behavioral Therapy | 03/25/2021 |
| Boundaries Psycho-Educational Class | 03/25/2021 |
| Leadership Skills | 08/18/2021 |
| Leadership Skills Part Two | 08/18/2021 |
| Leadership Skills Part Three | 08/18/2021 |
| Taking Ownership & Responsibility Skills | 08/18/2021 |
| Conflict Resolution Techniques | 08/18/2021 |

In addition to the above, Mr. Zenga has maintained a journal throughout this entire experience. He was advised by a mental health counselor, who has positively influenced him in many ways, to maintain the journal. The gentleman is named George N. Collins of Compulsion Studies. Mr. Zenga wrote to Mr. Collins on August 27, 2020, asking for guidance and mentorship, to include how he can use his experiences from his life and this case to one day become a counselor to others who are similarly situated sex offenders. Mr. Collins replied on October 9, 2020, and encouraged Mr. Zenga to continue with his recovery by creating a journal.

13

It outlines Mr. Zenga's insights on how he arrived to this lowest point in his life, the impact his misconduct has had on his victims, and the journey he has traveled thus far toward rehabilitation such as what he has learned from this overall experience, what he has done to improve himself, what he intends to do moving forward, and how he intends to ensure he never reoffends in the future, if released from incarceration.  At Mr. Zenga's request, his typewritten journal is hereby attached for the Court's and government's consideration in preparation for sentencing.  The correspondence to and from Mr. Collins are also attached.

**(9)** **<u>Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner</u>**

It is without question that Mr. Zenga will benefit from further psychological treatment while incarcerated (or on supervised release).  Mr. Zenga's history of childhood sexual abuse – which went untreated – in conjunction with sexual assault he experienced as an adult, and PTSD stemming from military service, were undoubtedly contributing factors to his criminal conduct.  To the extent Mr. Zenga can obtain additional mental health treatment while incarcerated, such treatment over the next seven (7) years (if the Court accepts the Defense sentencing recommendation) will reduce his risk of recidivism.  A prison term in excess of ten (10) years is not necessary to equip him with the psychological tools and resources to transition back into society.  It is clear from all accounts that Mr. Zenga has already benefitted from the care and treatment received while at Wyatt.  His progress in the past three (3) years is well-documented and indisputable.   The work he has accomplished is nothing short of impressive, and should leave the Court with some margin of confidence that this particular defendant, notwithstanding the gravity of his misconduct, has a real chance at leading a meaningful and constructive lifestyle again, if released from prison.

A lengthy prison term is not needed to otherwise provide Mr. Zenga with any education or vocational training. He holds two graduate level degrees and has extensive work experience, to include an illustrious military career in the U.S. Navy. His resume is attached to this memorandum for the Court's consideration. Treatment and punishment are arguably the most applicable 18 U.S.C. § 3553 factors to Mr. Zenga.

**(10)   Act of Heroism While Incarcerated**

On August 19, 2020, while at the Wyatt, a fellow inmate attempted to take his own life in Mr. Zenga's presence. The inmate dove off the second floor of the tiered unit, over the railing, and headfirst down onto the floor. The impact rendered him immediately unconscious. Two men rushed to the inmate's aid, and attempted to move him. Mr. Zenga intervened to prevent them from moving the man. Instead, Mr. Zenga utilized his medical training from the military to provide the unconscious inmate with cervical spine stabilization. Mr. Zenga then checked the man's pulse and for breathing, but he was not respirating. Mr. Zenga administered a rescue breath, which prompted the man to resume breathing. The staff members on scene did not have the proper training to the tend to the man. Though they ordered surrounding inmates in the unit to lock in their cells, Mr. Zenga refused to leave to injured man's side. He was not cited for disobedience, as the staff on scene quickly recognized that Mr. Zenga had both the training and experience to tend to man's needs until emergency medical personnel could respond from the Central Falls Fire Department. The Wyatt recognized Mr. Zenga's actions that day, which minimized the inmate's injuries and arguably saved this life.

This story is offered to the Court and government to offer a glimpse of the many positive qualities and characteristics Mr. Zenga has to offer. Throughout his lifetime, Mr. Zenga has done a lot of good for many people, and should not solely be remembered or defined for his

admittedly egregious misconduct that brings him before this Court.  His actions at the Wyatt last summer are indicative that with the correct treatment, resources, and supervision, Mr. Zenga has more to offer the world during his lifetime, if not ordered to spend the remainder of it incarcerated.

**(11)   Incarcerated During COVID-19**

Mr. Zenga has remained incarcerated since October 2018.  The past 18 months of incarceration for Mr. Zenga, from February 2020 to present time, have been during the COVID-19 pandemic.  Life behind bars during this period was particularly arduous.  Beginning in April 2020, the Wyatt cancelled all detainee programming related to religion, education, and mental health.  On April 25, 2020, all inmates were locked for approximately 36 hours with no access to phones, showers, and more.  The facility then transitioned to a quarantine lockdown period where inmates were let out in small groups within each unit, to shower, use the phones, obtain hot water to prepare food in their cells, and more.  The law library was also off limits for many months, restricting detainee access to their discovery materials.

Mr. Zenga recalled one instance of being locked in his cell for 54 consecutive hours at one point during the quarantine lockdown.  Sanitary conditions in the units were also less than ideal.  Inmates were forced to share showers, hot water dispensers, and other facilities without cleaning or disinfecting in between uses.  Social distancing was neither implemented nor enforced, and many inmates refused to wear masks.  Wyatt also did not provide the inmates with adequate cleaning supplies.  The facility also did not serve or offer hot meals for long periods of time and legal calls, receipt of mail, and property requests were inconsistent.  Needless to say, these conditions fell considerably short of the minimum standards that any confinement facility should adhere to when charged with the health, welfare, and safety of inmates.  Though Mr.

Zenga never contracted COVID-19, he lived with fears and anxiety for many weeks that he might contract the deadly virus, which were exacerbated by conditions at the Wyatt. He asks the Court to consider these particularly hard times when fashioning his sentence.[15]

### III. ATTACHMENTS

A. Resume;

B. Good Conduct Letter;

C. Performance Evaluations;

D. Letter of Heroism;

E. Certificates;

F. Journal;

G. Statements of Support; and

H. Psychological and Sexual Evaluation Report.

### IV. BOP RECOMMENDATION REQUEST

Mr. Zenga asks the Court to recommend to the BOP that he be designated to serve his sentence at Devens, Massachusetts. He requests this particular designation because Devens offers both a sex offender treatment residential program and a maintenance program. He hopes to avail himself of these beneficial programs during his incarceration.

---

[15] In the matter of *United States v. Esperitusanto*, Case No. 19-CR-10136-ADB, on January 29, 2021, the Honorable Allison D. Burroughs in the District of Massachsuetts sentenced a Defendant, who had spent 23 months in pretrial custody at the Wyatt, to 33 months of incarceration where the applicable advisory guidelines range was 46 to 57 months. The Court imposed the 13-point variance, or 28% discount from the bottom end of the range because the Defendant both contracted COVID-19 and spent time incarcerated during the pandemic, under arduous and extraordinarily restrictive conditions.

## V. **CONCLUSION**

Based upon the foregoing, Mr. Zenga respectfully asks the Court to impose a sentence of 120 months, which he contends is "sufficient, but not greater than necessary" to achieve the objectives of 18 U.S.C. § 3553 (a).

Respectfully submitted on this 8th day of September 2021.

                                      Respectfully submitted
                                      Defendant,
                                      Ronald Zenga
                                      By his Counsel

                                      /s/ John L. Calcagni III, Esq.
                                      John L. Calcagni III (Bar No.: 6809)
                                      Law Office of John L. Calcagni III, Inc.
                                      One Custom House Street, Third Floor
                                      Providence, RI 02903
                                      Phone: (401) 351.5100
                                      Fax: (401) 351.5101
                                      Email:  jc@calcagnilaw.com

## **CERTIFICATION**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on 8th day of September 2021.

                                      /s/ John L. Calcagni III, Esq.
                                      John L. Calcagni III (Bar No. 6809)
                                      Law Office of John L. Calcagni III, Inc.
                                      One Custom House Street, Third Floor
                                      Providence, RI 02903
                                      Phone: (401) 351.5100
                                      Fax: (401) 351.5101
                                      Email:  jc@calcagnilaw.com