<pre>
 1                  IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF RHODE ISLAND

 3

 4
          * * * * * * * * * * * * * * *   C.R. NO. 19-112-JJM
 5                                     *
      UNITED STATES OF AMERICA         *
 6                                     *
          VS.                          *   NOVEMBER 19, 2020
 7                                     *   10:00 A.M.
      RONALD W. ZENGA                  *
 8                                     *
          * * * * * * * * * * * * * * *   VIA VIDEOCONFERENCE
 9

10            BEFORE THE HONORABLE JOHN J. McCONNELL, JR.,

11                           DISTRICT JUDGE

12
                        (Change of Plea Hearing)
13

14    APPEARANCES:

15    FOR THE GOVERNMENT:    JOHN P. McADAMS, AUSA
                             U.S. Attorney's Office
16                           50 Kennedy Plaza
                             Providence, RI  02903
17
      FOR THE DEFENDANT:     JOHN E. MacDONALD, ESQ.
18                           Law Office of John E. MacDonald
                             One Turks Head Place Suite 1440
19                           Providence, RI  02903

20    Court Reporter:        Karen M. Wischnowsky, RPR-RMR-CRR
                             One Exchange Terrace
21                           Providence, RI  02903

22

23

24

25
</pre>

1    19 NOVEMBER 2020 -- 10:00 A.M.

2    VIA VIDEOCONFERENCE

3         THE COURT:  Good morning, everyone.  We're here

4    this morning in the case of the United States versus

5    Ronald Zenga, 19-112.  We're here for a change of plea.

6         Would counsel identify themselves for the

7    record, please.

8         MR. McADAMS:  Good morning, your Honor.  John

9    McAdams on behalf of the United States.

10        THE COURT:  Good morning, Mr. McAdams.

11        MR. MacDONALD:  Good morning, your Honor.  John

12   MacDonald for Mr. Zenga.

13        THE COURT:  Good morning, Mr. MacDonald.

14        Good morning, Mr. Zenga.

15        THE DEFENDANT:  Good morning, your Honor.

16        THE COURT:  Mr. Zenga, would you stand now, and

17   Ms. McGuire's going to swear you in.

18        THE DEFENDANT:  Yes, sir.

19        (Defendant sworn)

20        THE CLERK:  Please state your name for the

21   record and spell your last name.

22        THE DEFENDANT:  Ronald William Zenga, Z-E-N-G-A.

23        THE COURT:  Mr. Zenga, before we begin, we're

24   conducting this hearing remotely via Zoom.  We're all

25   in different places, and we're doing that because we've

1    determined that it's not safe to bring people together

2    in the courthouse right now because of the pandemic.

3        You have a right to have your court proceeding

4    in person, but I understand that after talking with

5    your attorney you've determined that it's in your best

6    interest now to proceed remotely.  Is that correct?

7        THE DEFENDANT:  Yes, sir.  Yes, your Honor, that

8    is correct.

9        THE COURT:  And, Mr. Zenga, you waive any right

10    to be present for this hearing and to proceed remotely?

11        THE DEFENDANT:  Yes, your Honor, I do waive that

12    right.

13        THE COURT:  Great.  And, Mr. MacDonald, you

14    agree with that waiver?

15        MR. MacDONALD:  Yes, your Honor.

16        THE COURT:  Great.  Thanks.  So, Mr. Zenga,

17    you're now under oath, and that requires you to give me

18    truthful answers to the questions I ask.

19        If you fail to give me truthful answers, then

20    the Government could bring further charges against you,

21    like perjury or giving a false statement or other

22    charges.  Do you understand that?

23        THE DEFENDANT:  Yes, your Honor, I do.

24        THE COURT:  Okay.  If I ask you a question that

25    you don't understand, just ask me to repeat it, and I

1    would be glad to.  And if at any time you want to have

2    a private, confidential talk with your lawyer, you let

3    me know.

4            We have the ability for you to be able to do

5    that by sending you into a breakout room confidentially

6    so that just you and your attorney could speak.  So if

7    at any time you need or want to speak with your

8    attorney privately, you let us know, and we can

9    accommodate that.  Okay?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  Now, you signed a plea agreement in

12   this case, Mr. Zenga.  Do you remember signing that

13   plea agreement?

14           THE DEFENDANT:  Yes, your Honor, I do.

15           THE COURT:  And did you sign that plea agreement

16   after you thoroughly reviewed it with your attorney?

17           THE DEFENDANT:  Yes, your Honor, I did.

18           THE COURT:  And he answered all of the questions

19   that you had about the plea agreement?

20           THE DEFENDANT:  Yes, sir, he did.

21           THE COURT:  And did you sign that plea agreement

22   knowingly and voluntarily?

23           THE DEFENDANT:  Yes, I did.

24           THE COURT:  Mr. Zenga, how old are you, sir?

25           THE DEFENDANT:  I'm currently 45 years old.

1    THE COURT:  Forty-five.  And how far did you go

2 in school?

3    THE DEFENDANT:  I have two master's degrees.

4    THE COURT:  Okay.  And have you been treated

5 recently for any mental illness or addiction to

6 narcotic drugs of any kind?

7    THE DEFENDANT:  No, sir, I have not.

8    THE COURT:  And as you sit here today, are you

9 currently under the influence of any drugs, medication

10 or alcoholic beverages of any kind?

11    THE DEFENDANT:  Last night I took 50 milligrams

12 of Zoloft as prescribed by my doctor; but other than

13 that, no other substances, sir.

14    THE COURT:  And does the taking of that Zoloft

15 last night affect in any way this morning your ability

16 to think clearly and act in your own best interest?

17    THE DEFENDANT:  No, your Honor, it does not.

18    THE COURT:  How long have you been taking Zoloft

19 for?

20    THE DEFENDANT:  Approximately two years, sir,

21 now.

22    THE COURT:  Okay.  And you've not had any

23 adverse reactions from that or cloudy thinking or

24 anything like that from the medication?

25    THE DEFENDANT:  Only when I began the

1    medication, sir, but I have not had that in two years,
2    sir.
3           THE COURT:  Okay.  And you don't have that this
4    morning; is that right?
5           THE DEFENDANT:  I do not have that.
6           THE COURT:  Okay.  Great.  Now, have you
7    received a copy of the Indictment?  That's the written
8    charges that the Government has brought against you in
9    this case.
10          THE DEFENDANT:  Yes, your Honor, I have.
11          THE COURT:  Okay.  And did you review that
12   Indictment with your lawyer and did he answer all of
13   your questions about the Indictment and the
14   consequences of the Indictment?
15          THE DEFENDANT:  Yes, I did; and yes, he did.
16          THE COURT:  And are you fully satisfied with the
17   representation that you've received from Mr. MacDonald
18   in this case?
19          THE DEFENDANT:  Yes, sir, I am.
20          THE COURT:  Now, Mr. Zenga, if you change your
21   plea to guilty today, you're going to give up certain
22   rights that you have under the Constitution and laws of
23   this country.
24          I want to make sure you understand that you have
25   these rights and that if you change your plea to guilty

1    you'll give up these rights.

2         So you have the right to continue to plead not

3    guilty as you have so far in this case, and you can

4    throughout all of the proceedings.  If you were to

5    continue to proceed in a not-guilty plea, you'd be

6    entitled to a trial by a jury.

7         At that trial you'd be presumed to be innocent

8    and the Government would have to prove each and every

9    element of the charges it brings against you beyond a

10   reasonable doubt.

11        You'd have a right to see and hear, confront,

12   have your lawyer cross-examine all of the witnesses and

13   the evidence that the Government would put on in order

14   to prove its case against you.

15        You'd also have a right to put on a defense.  In

16   fact, you could subpoena people, require them to come

17   to court and testify in your defense.

18        You would also have a right to testify at that

19   trial; but, more importantly, you would not have to

20   testify.  And if you chose not to testify, that fact

21   could not be used against you in any way by the Court

22   or by the jury; but if you change your plea to guilty

23   today, Mr. Zenga, you're going to give up all these

24   rights and there will be no trial.

25        You understand that you have these rights and

1    that if you change your plea to guilty you'll be giving

2    up these rights?

3              THE DEFENDANT:  Yes, your Honor, I do understand

4    that.

5              THE COURT:  Has anyone in any way attempted to

6    force you to plead guilty or threatened you in any way

7    to get you to plead guilty?

8              THE DEFENDANT:  No, your Honor.

9              THE COURT:  Has anyone made any promises or

10   assurances to you other than what's contained in the

11   plea agreement to get you to plead guilty to these

12   charges?

13             THE DEFENDANT:  No, your Honor.

14             THE COURT:  So are you knowingly and voluntarily

15   today changing your plea to guilty because you've

16   determined at this time it's in your best interest to

17   do so?

18             THE DEFENDANT:  That is correct, your Honor.

19             THE COURT:  Okay.  Now, I want to review with

20   you what the maximum penalties are that the Court could

21   impose at the time of sentencing in this case.  Each

22   count brings with it different a maximum penalty and

23   minimum penalty in some instances.

24             So Count I has a minimum -- mandatory minimum of

25   10 years up to a maximum of lifetime of incarceration,

1   a $250,000 fine, a lifetime of supervised release, a

2   $100 mandatory special assessment and a $5,000

3   additional assessment.

4           Count VI, which is the distribution charge,

5   comes with a five-year mandatory minimum, up to 20

6   years of incarceration, a $250,000 maximum fine, up to

7   a lifetime of supervised release, a $100 mandatory

8   special assessment and a $5,000 special assessment.

9           Count VII, which is the receipt count, again has

10  the same, a minimum of five years, a maximum of 20

11  years, a lifetime of supervised release, a $250,000

12  fine and a $100 mandatory special assessment.

13          Count VIII, the possession charge, has a maximum

14  penalty of 10 years, a maximum fine of $250,000, up to

15  three years of supervised release and a $100 mandatory

16  special assessment.

17          Now, if the Court were to impose the maximum

18  sentence as to all four counts and if the Court were to

19  require that they be served consecutively, that means

20  one after the other, then the maximum term of

21  imprisonment in this case is life, the maximum fine is

22  $1 million, there's a lifetime of supervised release

23  and there is a $400 special assessment and a potential

24  $10,000 additional assessment.

25          Do you understand that these are the maximum

1      penalties that the Court could impose at the time of

2      sentence?

3              THE DEFENDANT:  Your Honor, one thing on my copy

4      of the plea agreement, it says a maximum special

5      assessment of $20,000.  Is my copy correct or --

6              THE COURT:  That's the special assessment.

7      You're correct.  That's 20,000.  It's 5,000 per count.

8      I apologize.  I misspoke when I said it was 10,000.

9              Do you understand that those are the maximum

10     penalties that the Court could impose at the time of

11     sentencing?

12             THE DEFENDANT:  I do understand that, your

13     Honor.

14             THE COURT:  Okay.  And you understand that if

15     you plead guilty, the Court will have no choice but to

16     impose at least a minimum of 10 years and up to a

17     lifetime of imprisonment?  Do you understand that as

18     well?

19             THE DEFENDANT:  I understand that, your Honor.

20             THE COURT:  Okay.  Are you a U.S. citizen,

21     Mr. Zenga?

22             THE DEFENDANT:  Yes, sir, I am.

23             THE COURT:  Okay.  As a U.S. citizen, you have

24     certain valuable civil rights that you could lose if

25     you plead guilty to these felonies.

1          You could lose the right to vote, the right to

2     hold public office, the right to serve on a jury and

3     the right to possess any kind of firearm or ammunition.

4          Do you understand that you could lose these

5     valuable civil rights if you plead guilty to these

6     felonies?

7          THE DEFENDANT:  I do understand.

8          THE COURT:  Mr. McAdams, are there any

9     forfeiture allegations?

10         MR. McADAMS:  Your Honor, there's forfeiture of

11    the various electronic media devices that were seized

12    in the case, telephones and some other electronic media

13    devices.

14         THE COURT:  Thank you.  Mr. Zenga, have you

15    discussed the forfeiture allegations with your

16    attorney?

17         THE DEFENDANT:  Yes, your Honor, I have.

18         THE COURT:  And do you understand that by

19    changing your plea of guilty today you give up any

20    right to contest those forfeiture allegations; that is,

21    you'll have no right to claim any interest whatsoever

22    in any of the materials set forth in the Indictment

23    forfeiture allegations?

24         THE DEFENDANT:  I understand that, sir, your

25    Honor.

1          THE COURT:  Now, Mr. Zenga, I want to make sure

2     you understand how the Court will go about determining

3     an appropriate sentence in your case.

4          At some point after this hearing, the Probation

5     Department will interview you and do a further

6     investigation in order to prepare a presentence report.

7          You have a right to have your lawyer present

8     with you for that interview with probation, and I

9     encourage you to make sure that your lawyer is present

10     for it, be it by Zoom or phone or however they conduct

11     it these days.

12          They'll prepare a presentence report that will

13     have a lot of information about the crime, your

14     background, any criminal history and whatnot; but,

15     importantly, it will calculate the advisory guideline

16     range.  Those are guidelines that help the Court

17     determine what an appropriate sentence is in your case.

18          Now, I've not determined what the guideline

19     range is in your case.  You may have calculated it.

20     Your lawyer may have calculated it.  The Government may

21     have calculated it and told your lawyer who told you.

22          I need for you to understand that none of that's

23     binding on the Court.  I'm not going to determine your

24     guideline range until after the presentence report is

25     issued, both sides have a chance to object to it, I

1    rule on those objections, and at the time of sentencing

2    in about 75 days or so I'll determine the guideline

3    range.

4          Do you understand as we sit here today I've not

5    yet determined what the guideline range will be in your

6    case?

7          THE DEFENDANT:  I understand that, your Honor.

8          THE COURT:  Do you also understand that as part

9    of your plea agreement that you agreed to waive any

10   right to appeal the sentence if the Court imposes a

11   sentence that's within or below the guideline range?

12        Do you understand that you've waived any right

13   to appeal the sentence in most circumstances under

14   those conditions?

15        THE DEFENDANT:  I do understand that, your

16   Honor.

17        THE COURT:  Okay.  I'm now going to ask

18   Mr. McAdams to tell us what the elements of each count

19   are.  Again I remind you, Mr. Zenga, that the

20   Government would have to prove each and every one of

21   the elements beyond a reasonable doubt in order for you

22   to be found guilty of any or all of the counts.

23        I'm then going to ask him to tell us what facts

24   the Government would prove if this case were to go to

25   trial, and at the end of it I'm going to ask you if you

1    admit the facts as stated by the Government as true.
2    So I want to you pay particular attention to the facts.
3    Okay?
4              THE DEFENDANT:  Yes, your Honor, I will.
5              THE COURT:  Okay.  Thanks.
6              Mr. McAdams.
7              MR. McADAMS:  Thank you, your Honor.  Your
8    Honor, as the plea agreement indicates, the Defendant
9    is pleading guilty to Counts I, VI, VII and VIII of the
10   Indictment.  So I'll go through each of those counts,
11   the elements, in order.
12             For Count I, which is using a means of
13   interstate commerce to entice or coerce a minor to
14   engage in illicit sexual activity, there are four
15   elements.
16             The elements are, one, that the Defendant
17   knowingly persuaded, induced, enticed or coerced the
18   person in question to engage in sexual activity;
19   secondly, that he did so using a facility or means of
20   interstate or foreign commerce; three, that the person
21   at the time was less than 18 years old; and, fourth,
22   that the sexual activity in question was a criminal
23   offense.
24             Generally the criminal offense is defined by
25   state law.  In Rhode Island, a person is guilty of

1    first-degree child molestation, sexual assault, if he

2    or she engages in sexual penetration with a person 14

3    years of age or under.  Oral sex constitutes

4    penetration for purposes of this statute.

5         With respect to Counts VI and VII, which charge

6    the Defendant with distribution and receipt of child

7    pornography, the elements are the same for both of

8    those counts except with regard to whether the

9    pornography was distributed or received.  So I'll just

10   read those one time.

11        To establish those, the Government must prove

12   five essential elements:  First, that the Defendant

13   either knowingly distributed or received a visual

14   depiction; second, that the production of such visual

15   depiction involved the use of a minor engaged in

16   sexually explicit conduct; third, that the visual

17   depiction is of a minor engaged in sexually explicit

18   conduct; fourth, that the Defendant knew that at least

19   one of the performers in the visual depiction was a

20   minor and that the visual depiction was of a minor

21   engaged in sexually explicit conduct; and, fifth, that

22   the visual depiction had been either transported in

23   interstate or foreign commerce or contained or was

24   produced using materials that had been transported in

25   interstate or foreign commerce by computer or other

1    means.

2          Count VIII charges the Defendant with possession

3    of child pornography.  The Government must prove the

4    following five elements beyond a reasonable doubt:

5    First, that the Defendant knowingly possessed any

6    computer, computer storage medium or matter which the

7    Defendant knew contained a visual depiction of a minor

8    engaged in sexually explicit conduct; second, that the

9    Defendant knew the visual depiction contained in the

10   storage medium was of or showed a minor engaged in

11   sexually explicit conduct; third, that the Defendant

12   knew the production of the visual depiction involved

13   the use of a minor engaged in sexually explicit

14   conduct; fourth, that the child pornography had either

15   been mailed or shipped or transported in interstate or

16   foreign commerce by any means, including computer, or

17   had been produced using materials that had been mailed,

18   shipped or transported in interstate or foreign

19   commerce by any means, including computer; and, fifth,

20   that the minor child was real.

21         With respect to the facts, your Honor, had the

22   case proceeded to trial on these particular counts, the

23   Government would have proven the following facts beyond

24   a reasonable doubt:

25         In September 2018, Homeland Security

1    Investigations, Providence, Rhode Island, office,

2    received information regarding an investigation

3    initiated by the Bedfordshire Police Department in the

4    United Kingdom.

5         On June 8th, 2018, an individual later

6    determined to be the Defendant, using an e-mail address

7    ending in the e-mail company protonmail.com, made

8    contact with an undercover law enforcement officer on a

9    Russian file-sharing website. The name of the website

10   I will spell. It's iMGSRC.RU, an unpronounceable word

11   that law enforcement uses the phrase "imager" to refer

12   to and I'll refer to it as those facts -- in these

13   facts.

14        iMGSRC.RU is well known to law enforcement as a

15   website frequently used by individuals to meet and

16   communicate with other individuals who share an

17   interest in child exploitation materials. Protonmail

18   is an end-to-end encrypted e-mail service provider

19   based in Switzerland.

20        Between June 8th and July 20th of 2018, the

21   undercover law enforcement officer exchanged e-mail

22   communications with the Defendant via his

23   protonmail.com e-mail address. I'm going to read two

24   excerpts from the e-mail communications, which are

25   samples.

1          The Defendant stated, (Reading) Hi there.  I saw

2     your album and comments on iMGSRC.  I also have a

3     12-year-old kitty.  She has been getting daddy treats

4     since she was little.  She likes them so much that she

5     used to crawl into bed to get them while I was

6     sleeping.  Hoping we can share stories about our

7     kitties.

8          The law enforcement officer responded, (Reading)

9     Hi.  Nice to hear you have your own pet.  Teenage, too.

10    I think we will have a few things to chat about.  How

11    far have you gone with yours?  Sounds like you've been

12    doing it for some time, eh?  Hope she still likes

13    cuddling up to daddy?!

14         The Defendant responded, (Reading) Probably

15    since she was three or so.  I used to watch her when

16    her mom was at work.  It got to be too much of a hassle

17    to lock myself in my room when I wanted to jerk off, so

18    I started doing it with my laptop at the kitchen table.

19    One day she went under the table and did what comes

20    naturally to little girls.  I started eating her pussy

21    every time my wife left the house after that day.

22    Still haven't fucked her yet, although she sat and

23    looked at TT with me while I jerked off last week.  How

24    about you?  How long have you two been playing?

25         A few days later the Defendant then e-mailed

1    saying, (Reading) Had a good Father's Day to hold me
2    over for a while.  I was traveling for work last week.
3    My wife went out to run errands, and I had already
4    spent the day naked.  So I sat down at the kitchen
5    table, pulled up some incest porn and started jacking.
6    She came over to watch me.  She took her shirt off for
7    me and let me play with her little titties while I
8    jacked.  She even finished me off with her hand.  I
9    told her it was the best Father's Day gift I've ever
10   had so far.  She seems to really like to hear that and
11   to know that her little titties got me off.

12        The Defendant then provided the undercover
13   officer with his username on a different social media
14   application called Kik, which they continued similar
15   conversations on.

16        Using the Kik username, Homeland Security was
17   able to track down the subscriber information and IP
18   addresses to the Defendant's residence in Middletown.

19        On October 17th, 2018, law enforcement agents
20   from Homeland Security and members of the Rhode Island
21   Internet Crimes Against Children Task Force executed a
22   federal search warrant at the Defendant's residence.
23   The residence was occupied by the Defendant, his wife
24   and a minor child.

25        The Defendant was Mirandized and interviewed.

1    Among other things, he stated the following:  He

2    admitted that he received, distributed and possessed

3    child pornography on the social media application Kik

4    and through his protonmail.com e-mail address.

5          He admitted the particular username on Kik that

6    he had provided to the undercover agent.  He admitted

7    the specific e-mail address that he had been using on

8    the iMGSRC.RU website.

9          He acknowledged that he viewed child pornography

10   on multiple other websites.  He admitted that he had

11   been sexually molesting his daughter.  He stated that

12   it occurred approximately beginning at the age of eight

13   or nine, continuing up to approximately two weeks prior

14   to the execution of the search warrant, at which time

15   the victim would have been 13 years old.

16         He acknowledged that the sexual abuse began when

17   he was in the United States Navy stationed in Guam.  He

18   stated that the abuse included performing and receiving

19   oral sex from his daughter and -- from the minor

20   victim.  Excuse me.

21         He admitted that he was recently chatting on the

22   Kik application with another adult male about the

23   possibility of having the other adult male visit the

24   home and engage in sexual contact with the minor victim

25   while the Defendant masturbated.  The Defendant

1    acknowledged that he actually recently discussed this

2    with the minor victim.

3          He had also admitted that he had child

4    pornography on his Apple MacBook Air top -- Apple

5    MacBook Air laptop computer and Samsung Galaxy 7

6    smartphone as well as the protonmail e-mail account

7    described earlier.

8          Forensic previews conducted by law enforcement

9    during the execution of the warrant located child

10   pornography in the e-mail account.  For example, there

11   was an e-mail dated September 29th, 2018, from the

12   Defendant to another e-mail address on protonmail.com

13   with the subject line "Hello from iMGSRC" that had

14   attached to it three images of child pornography, each

15   depicting a minor female with an adult male penis in

16   her mouth.

17         Subsequent final -- subsequent forensic analysis

18   identified 355 images containing confirmed child

19   pornography and seven videos of confirmed child

20   pornography.  The Defendant told agents that he

21   frequently deleted child pornography from his computer.

22         The minor victim was interviewed by a forensic

23   interviewer in the fall of 2018.  At that time she was

24   13 years old.  She disclosed that the Defendant had

25   been sexually molesting her since her first memories.

1  She had specific memories of being molested at age
2  three when the family lived in Navy housing in Japan.
3      In addition to Japan, she described specific
4  incidents of sexual abuse that occurred in Navy housing
5  in Guam as well as a hotel room in Texas when the
6  family was on vacation and numerous incidents that
7  occurred in Rhode Island.
8      She stated that the sexual abuse had been
9  continuous up until the date of arrest.  She stated
10  that it happened pretty much whenever he knew my mom
11  was going to be out of the house for a while.  She knew
12  that it was wrong, but she was afraid to tell anyone
13  because the Defendant told her not to and because she
14  was conflicted.
15      Notably, the minor described incidents very
16  similar to the incidents that the Defendant described
17  in the chats with both the undercover police officer I
18  described above and with another person that he was
19  communicating with online via the social media
20  application Kik.
21      For example, the Defendant described an incident
22  of sexual abuse occurring around the period of Father's
23  Day which in 2018 occurred on June 17th, 2018.  Without
24  being shown any of these chats, the minor victim
25  described similar abuse.

1    She stated that in the summer of 2018, the

2    Defendant showed her both adult and child pornography

3    while masturbating and/or molesting her in order to

4    show her that such activity was okay and normal.

5    She described a specific incident where the

6    Defendant showed her images of three girls between the

7    ages of 9 and 14 who appeared to be sisters.  They were

8    naked and posing in a sexually provocative manner.

9    The Defendant told her that he was sleeping with

10   their mother and that the girls just pop in from time

11   to time and do the same thing that the Defendant and

12   his daughter were doing, i.e., sexual contact.

13   She also described a 2018 incident where she

14   encountered the Defendant in the office across the hall

15   from her bedroom.  He was naked watching pornography on

16   his laptop and masturbating while her mother was out of

17   the house.  He then proceeded to sexually abuse her.

18   The victim stated that she came home and found

19   the Defendant viewing the pornography and masturbating.

20   He called her over and started touching her breasts and

21   buttocks under her clothes while masturbating.

22   The Defendant led her to her room, laid her on

23   the bed, asked if he could go down on her, i.e.,

24   perform oral sex on her.  The minor victim did not say

25   anything, and the Defendant proceeded to perform oral

1    sex on her.  After a while he stopped, said, "You taste

2    good," and walked back to the office.

3          I'm finished, your Honor.

4          THE COURT:  Thanks, Mr. McAdams.

5          Mr. Zenga, you heard the elements of the

6    charges, each of the four counts that the Government

7    has brought against you.  I again remind you that they

8    have to prove each and every one of those elements

9    beyond a reasonable doubt for you to be found guilty of

10   any or all of the counts.

11         You also heard the facts the Government says it

12   would prove if this case were to go to trial.  Do you

13   admit the facts as stated by the Government as true?

14         THE DEFENDANT:  Your Honor, I admit that the

15   facts are substantially correct and that an enticement

16   did take place.

17         THE COURT:  What aspects of the facts are not

18   completely true?

19         THE DEFENDANT:  John?

20         MR. MacDONALD:  Your Honor --

21         THE COURT:  I'm only trying to ensure that we

22   have a sufficient factual basis to establish each of

23   the elements of the four counts.

24         So if it's outside of that, then I don't have a

25   concern if there are quibbles with it; but I need

1    assurances from Mr. Zenga if it's true that sufficient

2    facts exist for each of the counts.

3          MR. MacDONALD:  Your Honor, if I may.

4    Co-counsel John Calcagni discussed this with

5    Mr. McAdams yesterday.  There are minor details in the

6    factual basis provided by the Government that Mr. Zenga

7    does disagree with.  It does not affect the elements of

8    either of the counts he is pleading guilty to.

9          THE COURT:  Any of them?

10          MR. MacDONALD:  Thus the substantial agreement.

11          THE COURT:  Mr. McAdams, are you satisfied with

12    that?

13          MR. McADAMS:  That is correct, your Honor.  What

14    Mr. Calcagni and I discussed was that Mr. Zenga's

15    concerned that some of the details that he described in

16    his conversations with the undercover officer were

17    exaggerations or fantasy stories about the abuse that

18    he committed.

19          He doesn't dispute that he committed the abuse,

20    that he described it, but he added elements of detail,

21    for example, Father's Day, certain things of that

22    nature that were not accurate; but Mr. Calcagni and I

23    discussed the fact that he is admitting that he

24    committed each of the elements of each of the offenses

25    that he's pleading guilty to; that is, he used a means

1   of interstate commerce, the computer; he showed the

2   minor victim pornography, adult pornography and child

3   pornography; he told her that this was something that

4   people do that's normal; he did it as a means of

5   grooming her for sexual abuse; he committed that sexual

6   abuse on her.

7          He also is admitting that he possessed child

8   pornography, that he distributed child pornography,

9   that he did so using facilities and means of interstate

10  commerce.  Mr. Calcagni and I discussed --

11         THE COURT:  And that --

12         MR. McADAMS:  And that he received it as well.

13  Mr. Calcagni and I discussed it, and my understanding

14  is that he is admitting that he committed each of these

15  offenses and each element of the every offense but that

16  he thinks that, for example, the sexual abuse in his

17  memory occurred, as he told the agents, beginning

18  around when the victim was around eight; but he doesn't

19  dispute that the victim has told law enforcement that

20  she remembers that it began when she was around three.

21         He doesn't deny that two weeks prior to

22  execution of the search warrant he was sexually abusing

23  her using a means and facility of interstate commerce.

24         THE COURT:  Mr. Zenga; is that correct?

25         THE DEFENDANT:  Yes, your Honor, it is.

1    THE COURT:  Okay.  Before I ask you about your

2    change of plea, do you have any questions for the Court

3    or do you want to discuss any matter with your

4    attorney?

5    THE DEFENDANT:  No, your Honor, I have no

6    questions at this time.

7    THE COURT:  Mr. Zenga, how do you now plead to

8    the four counts contained in the Indictment against

9    you, Counts I, VI, VII and VIII, guilty or not guilty?

10    THE DEFENDANT:  Guilty, your Honor.

11    THE COURT:  This Court has heard from the

12    Government the evidence it would present if this matter

13    were to go to trial.  The Court has questioned the

14    Defendant regarding his understanding of the nature of

15    the proceedings and the consequences of entering a plea

16    of guilty to the charge.

17    It's, therefore, the finding of this Court in

18    the case of the United States versus Ronald Zenga that

19    the Defendant is fully capable and competent to enter

20    an informed plea, that the Defendant is aware of the

21    nature of the proceedings and the consequences of his

22    plea and that the plea of guilty is a knowing and

23    voluntary plea supported by an independent basis in

24    fact containing each of the essential elements of the

25    charge.  And, therefore, the plea is accepted; and the

1    Defendant is now adjudged guilty of those offenses.

2           Sentencing will be set down for February 2nd,

3    2021, at 10 a.m.

4           Mr. McAdams, anything further for the

5    Government?

6           MR. McADAMS:  No, your Honor.  Thank you.

7           THE COURT:  Mr. MacDonald, anything further for

8    Mr. Zenga?

9           MR. MacDONALD:  No, your Honor.  Thank you.

10          THE COURT:  Okay.  Great.  Folks, we'll stand

11   adjourned.  Thanks, everyone.

12          (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3

4              I, Karen M. Wischnowsky, RPR-RMR-CRR, do

5    hereby certify that the foregoing pages are a true and

6    accurate transcription of my stenographic notes in the

7    above-entitled case.

8

9              January 11, 2023

10             Date

11

12

13             /s/ Karen M. Wischnowsky

14             Karen M. Wischnowsky, RPR-RMR-CRR
               Federal Official Court Reporter
15

16

17

18

19

20

21

22

23

24

25